UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THOMAS EARL MCPHAUL,

      Petitioner,

v.                                                    Case No.  4:15cv624/RH/CJK

JULIE JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 17).  Petitioner did not reply.  (*See* Doc. 18 (order authorizing reply); Docs. 20, 22, 24 (orders extending time to reply)).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court

show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On August 27, 2010, petitioner was charged in Leon County Circuit Court Case No. 09-CF-4163, with three third degree felonies:  burglary of a conveyance (Count 1), criminal use of personal identification information (Count 2), and fraudulent use of a credit card (Count 3).  (Doc. 17, Ex. A, p. 6).[1]  Petitioner went to trial, with jury selection occurring on December 5, 2011, and the evidentiary portion occurring on December 6, 2011.  (Ex. A, Tr. of Jury Selection; Tr. of Trial).  At the close of the State's case, the defense moved for a judgment of acquittal on all counts. (Ex. A, Tr. of Trial, pp. 121-139).  The court denied the motion as to Counts 1 and 2, but reduced the charge on Count 3 to a first degree misdemeanor.  (*Id.*, p. 139). The jury found petitioner guilty of all counts as charged, and the case proceeded directly to sentencing.  (Ex. A, pp. 42-44, and Tr. of Trial, pp. 223-36).  Petitioner was adjudicated guilty and sentenced to 5 years in prison on Count 1, a consecutive term of 5 years in prison on Count 2, and time served on Count 3.  (Ex. A, pp. 47-57).  A corrected judgment and sentence was filed on December 6, 2012, correcting

---

[1] References to exhibits are to those provided at Doc. 17.  If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right of the page.

two scrivener's errors.  (Ex. B, pp. 72-93 (order partially granting motion to correct sentence), pp. 94-105 (corrected judgment and sentence)).  The Florida First District Court of Appeal ("First DCA") summarily affirmed the judgment on December 17, 2012.  *McPhaul v. State*, 103 So. 3d 150, (Fla. 1st DCA 2012) (Table) (copy at Ex. E).

On March 14, 2014, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising two claims.  (Ex. G, pp. 1-13).  On July 22, 2014, the state circuit court denied the second claim of the motion and set the first claim for an evidentiary hearing.  (Ex. G, pp. 23-26).  After hearing, (Ex. G, pp. 37-84), the court denied the first claim.  (Ex. G, pp. 31-34).  The First DCA summarily affirmed the denial of postconviction relief on October 20, 2015. *McPhaul v. State*, 179 So. 3d 322 (Fla. 1st DCA 2015) (Table) (copy at Ex. J).  The mandate issued December 28, 2015.  (Ex. M)).

Petitioner filed his federal habeas petition on December 18, 2015.  (Doc. 1). The petition raises two grounds of ineffective assistance of trial counsel.  (*Id*.). Respondent asserts that petitioner's first claim is without merit and that his second claim is unexhausted and, in any event, without merit.  (Doc. 17).

## SECTION 2254 STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).   A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

governing legal principle from this Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas

petition upon which there has been an adjudication on the merits in a state court

proceeding, the federal court must first ascertain the "clearly established Federal

law," namely, "the governing legal principle or principles set forth by the Supreme

Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538

U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly

established" only when a Supreme Court holding at the time of the state court

decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43,

47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, 575 U.S. —, —,

135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of this Court's decisions." (internal quotation marks and

citation omitted)).

After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law.  The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s)

was "objectively unreasonable" in light of the record before the state court.  *See*

*Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736,

159 L. Ed. 2d 683 (2004).  In applying this standard, the Supreme Court has

emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).  The § 2254(d) standard "is difficult to meet . . .

because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."    28 U.S.C. § 2254(d)(2).    The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding.  *See*

*Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable

application" clause, the federal court applies an objective test.  *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  *See* 28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## DISCUSSION

<u>Ground One</u>        "<u>Ineffective assistance of counsel – misadvising on the maximum sentence to be served.</u>"  (Doc. 1, p. 5 in ECF).

Petitioner contends he was denied effective assistance of counsel because his attorney, Deborah Whisnant, "failed to give correct advise [sic] on maximum sentence to serve."  (Doc. 1, p. 5 in ECF).  Petitioner states he presented this claim to the state courts in his Rule 3.850 proceeding.  (*Id.*, p. 6 in ECF).  Respondent asserts that petitioner is not entitled to relief because he has not met § 2254(d)'s exacting standard.  (Doc. 17, pp. 8-16).

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *See Strickland*, 466 U.S. at 687; *see also Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant."  *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.     Section 2254 Review of State Court's Decision

Petitioner raised this claim in state court as Ground One of his Rule 3.850 motion, where he alleged that the State offered to resolve the entire case (all three charges) on a 5-year plea deal; that Attorney Whisnant advised petitioner not to take

the offer because his maximum sentence exposure was only 5 years in prison; that

Attorney Whisnant did not advise him he could receive <u>consecutive</u> 5-year sentences

which could result in a higher total sentence; and that he rejected the 5-year offer

based on counsel's incorrect advice.    Petitioner also alleged that had he been

correctly advised, he would have accepted the 5-year plea offer and received a 5-

year sentence instead of a 10-year sentence.  (Ex. G, pp. 6-8).

The state circuit court conducted an evidentiary hearing on this claim and

heard testimony from petitioner and Attorney Whisnant.  (Ex. G, pp. 37-84).   After

considering the testimony, the circuit court denied relief in a written order.  (Ex. G,

pp. 31-34).   The court identified the controlling legal standard as the *Strickland*

standard (Ex. G, p. 33), and denied relief as follows:

> The Defendant alleges that his trial counsel, Public Defender
> Deborah Whisnant provided him with incorrect advice and thus denied
> him effective assistance of counsel.  Specifically, Mr. McPhaul alleges
> that his counsel was ineffective for incorrectly advising him that the
> maximum sentence he could receive (if he went to trial) was five years.
> He asserts that this advice caused him to reject the State of Florida's
> plea offer of "five years."   At the conclusion of the trial, he was
> convicted of 2 third degree felonies:  Burglary of a Conveyance and
> Criminal Use of Personal Identification.   Circuit Judge Josefina
> Tamayo then sentenced him to two <u>consecutive</u> five-year terms for a
> total period of incarceration of 10 years.
>
> The specific allegations were that Ms. Whisnant:
>
> A.  Informed the defendant that the State's five-year plea offer
> was a "take it or leave it" offer[;] that defense counsel informed

him that he may as well go to trial because the most he could get was five years for a third-degree felony; that they decided to proceeded [sic] to trial where Mr. McPhaul was found guilty of all charges. He received two five-year sentences which were ordered to run consecutively, making his total sentence 10 years instead of an anticipated five-year incarceration.

B. Mr. McPhaul maintains that but for Ms. Whisnant's misadvice he would have accepted the State[']s plea offer and a five-year sentence in the Department of Corrections.

This Court conducted an evidentiary hearing on September 11, 2014. Mr. McPhaul testified on his own behalf. He was adamant that Ms. Whisnant did not tell him that he could receive more than five years in this cause. Mr. McPhaul further testified that he was not unhappy with Ms. Whisnant's performance at trial, but that instead his dissatisfaction arose when the ultimate sentence effectively became 10 years rather than the five years he viewed as the potential "worst-case scenario."

Ms. Whisnant also testified before this court having been called as a witness on [behalf] of the State of Florida. Her testimony established that she did not have a clear recollection of all of the events surrounding this trial, which based on her caseload is not unexpected or unusual. She testified that she did not (or could not) deny the conversations as related by Mr. McPhaul. However, she further testified that she did not recall making the statements attributed to her by the Defendant. While Ms. Whisnant did not recall the specific conversation, she indicated that it would have been her custom to refer to the Criminal Punishment Code worksheet and to advise her client of the potential penalties.

. . . .

In the case at bar, Mr. McPhaul's own testimony appears to recognize that he understood that the maximum sentence he can receive for a third-degree felony was five years. The problem arises in that he was facing more than one third-degree felony. Mr. McPhaul insists that

his counsel told him the maximum sentence he could receive was five years.  On the other hand, his counsel clearly testified that she did not recall any such conversation, that it would have been her practice to advise her clients on the potential penalties and also to discuss the "score sheet" under the Criminal Punishment Code.

Based on the testimony presented, this court does not find that the evidence establishes that Mr. McPhaul was given incorrect advice. His counsel was an experienced public defender with many years['] service.  While she candidly admitted that she could not recall the specifics of this case, her custom and practice would have been to give Mr. McPhaul a correct assessment including advising him of the possibility of consecutive sentences, and this court finds it far more likely than not that she followed her practice and custom at the times material hereto.

This Court does not doubt that Mr. McPhaul thought the likely sentence [he] would receive from Judge Tamayo would be five years if he was convicted at trial.  Ms. Whisnant likewise testified that she was surprised that her client received consecutive five-year terms. However, the fact that counsel believed that Mr. McPhaul's *likely* exposure would be no more th[a]n 5 years does not mean that she failed to advise him of the possibility that the sentences could be run consecutively.

Having considered all the evidence herein and the law, this court finds that the motion of the Defendant is not well taken, and does not meet the criteria established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1983) and the cases following it, on the issue of ineffective assistance of counsel.

(Ex. G, pp. 32-33) (paragraph numbers omitted).   The First DCA summarily

affirmed.  (Ex. J).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's

summary affirmance, which is the final state court adjudication on the merits of

petitioner's claim.  *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *cert. granted*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017).  Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*."  *Wilson*, 834 F.3d at 1235.  The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98.  "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court."  *Id.* at 102.

Petitioner bears the heavy burden of establishing that there was no reasonable basis for the First DCA to deny relief on his ineffective assistance claim.  In

reviewing the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state circuit court). The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The First DCA reasonably could have adopted the state circuit court's factual findings, including its credibility determination in favor of Attorney Whisnant's testimony, because the record amply supports its findings. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); *see also* 28 U.S.C. § 2254(e).

Both petitioner and Attorney Whisnant testified at the evidentiary hearing. Petitioner testified that Attorney Whisnant communicated a 5-year plea offer from the State, but advised him that "five years is all you can get for the charges anyway, so we might as well go to trial." (Ex. G, pp. 43-44). Petitioner testified that "if my counsel would have told me that I could have gotten 10 years instead of just five,

then I would have accepted the plea for the five years and not took no 10 years.  I mean, not went to trial and got no 10 years." (*Id.*, p. 44).  Petitioner stated he was completely unaware he could get 10 years in prison if convicted of all three charges. (*Id.*, pp. 44, 53-54).  To support his testimony that he was amenable to a plea deal, petitioner testified that he had a prior criminal history and had resolved all of his prior cases on plea deals.  (*Id.*, p. 45).  On cross-examination, petitioner admitted that at the time he went to trial, he knew his case involved three separate third degree felony charges.  (*Id.*, pp. 50-51).  When asked about his knowledge of consecutive sentencing, petitioner admitted that he was not inexperienced in the criminal court system, but stated that his prior crimes were in Georgia.  (*Id.*).

Attorney Whisnant testified that she began practicing law in 1980, and practiced criminal defense for all but 5 years.[3]  (Ex. G, p. 55).  Whisnant testified that this case involved three separate third degree felony charges, and that she discussed the three different charges with petitioner.  (*Id.*, pp. 56-57).  Whisnant knew that the maximum penalty for a third degree felony in Florida was 5 years; that a judge could impose consecutive sentences for each charge upon conviction; and that the maximum possible sentence in petitioner's case was 15 years in prison.  (*Id.*,

---

[3] Thus, at the time of petitioner's trial in 2011, Attorney Whisnant was in her 26th year of criminal defense work.

pp. 56-57, 60, 62-63).  Attorney Whisnant did not recall particular conversations with petitioner about this case, but she explained that when she meets with clients, it is customary for her to go over both the maximum possible sentence the law provides as well as the sentence she believes, in her experience, the judge will likely impose.  (*Id*.).  Whisnant testified:  "[W]hat I usually do is say, the most you can get, you know, and – for each count and then what the guidelines are.  If the guidelines are, you know, lower than that, I'd say, you know, hopefully the judge – that's a minimum and advise, hopefully, the judge won't.  But again, I don't remember the specific conversation."  (*Id*., pp. 60-61).  Whisnant affirmed that in discussing ranges of possible sentences with her clients, her best impression of the likely sentence is not necessarily the same as the maximum possible sentence.  (*Id*., p. 61).  Whisnant confirmed at the close of her direct testimony that she understood petitioner's sentence exposure was 15 years, and that it was her policy when she met with clients prior to trial, to discuss their maximum exposure.  (*Id*., pp. 62-63).  During both direct and cross-examination, Whisnant testified that prior to trial, she did not believe 15 years, or even 10 years, was a <u>likely</u> sentence for petitioner.  (*Id*., pp. 60, 67).  In addition, on cross-examination Whisnant, although not recalling her advice on the alleged 5-year plea offer, did not deny petitioner's allegation that, the morning of trial she asked the prosecutor at petitioner's request whether he would entertain a

plea deal involving a sentence less than 5 years and the prosecutor said no. (*Id.*, pp. 64-67). Attorney Whisnant also conceded that it was possible she advised petitioner that the <u>likely</u> sentence he would receive if he lost at trial was 5 years, because she recalled being "shocked" when the judge sentenced petitioner to consecutive 5-year terms. (*Id.*, pp. 67). Whisnant, however, did not recall advising petitioner that 5 years was <u>all he could get</u>, *i.e.*, the maximum. (*Id.*, pp. 66-67).

Based on the state circuit court's findings and the evidentiary hearing record, the First DCA reasonably could have concluded that petitioner failed to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. The issue here is not whether counsel was ineffective for advising petitioner that his <u>likely</u> total sentence was 5 years in prison. The issue is whether counsel misadvised petitioner that although the statutory maximum for each third degree felony was 5 years in prison, his total sentence <u>could not exceed</u> 5 years. The state circuit court found, and the First DCA reasonably could have agreed, that Attorney Whisnant's testimony was credible, and that petitioner failed to demonstrate she gave incorrect advice concerning his maximum sentence exposure. *See Burt v. Titlow*, 134 S. Ct. at 17 (holding that "[w]ithout evidence that [counsel] gave incorrect advice or evidence that he failed to give material advice, [petitioner] cannot establish that his performance was deficient.")

(citation and quotation marks omitted); *Dasher v. Attorney Gen., Fla.*, 574 F.3d 1310, 1313-14 (11th Cir. 2009) (holding that if an attorney does not have a specific recollection of discussing particular information with his client, but testifies in the state postconviction evidentiary hearing that it was his normal practice to discuss such information, the federal habeas court should defer to the state court's finding that the attorney discussed the particular information with the client); *Blankenship v. McNeil*, 542 F.3d 1253, 1274 (11th Cir. 2008) ("[W]hen the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and faded memory, we presume counsel performed reasonably and exercised reasonable professional judgment.") (citations omitted).

Because fairminded jurists can concur in the First DCA's determination that petitioner failed to establish Attorney Whisnant denied him effective assistance of counsel by providing incorrect advice that his maximum possible sentence was only 5 years in prison, petitioner is not entitled to federal habeas relief.

Ground Two      "Ineffective assistance of counsel – failing to object to defective information at trial." (Doc. 1, p. 7 in ECF).

Petitioner contends Attorney Whisnant denied him effective assistance of counsel by failing to object to the charging document. Petitioner argues the charging information was defective because his name appeared only in the caption and was not listed in each individual count. (Doc. 1, p. 7 in ECF) (*citing* Fed. R. Crim. P.

7(c)).  Petitioner states he exhausted this claim by presenting it in his Rule 3.850

proceeding.  (*Id*.).

Respondent asserts that although petitioner presented this ineffective

assistance claim to the state circuit court, he did not raise the same claim in his

postconviction appeal.  Rather, on appeal petitioner argued that the information was

"fundamentally defective", not that counsel was ineffective for failing to challenge

it.  Thus, respondent contends, petitioner's ineffective assistance claim is

unexhausted and procedurally defaulted.  (Doc. 17, pp. 17-20).  Respondent also

contends petitioner's claim is without merit, as the information was valid as a matter

of state law, so counsel could not have been ineffective for failing to challenge it.

(*Id*., pp. 17, 21-23).

The court need not address the procedural default issue, because even

assuming to petitioner's benefit (without deciding) that his postconviction appellate

brief fairly presented his ineffective assistance claim based on counsel's failure to

challenge the information, petitioner is not entitled to federal habeas relief.  The state

circuit court denied relief on petitioner's claim after applying the *Strickland*

standard.  (Ex. G, pp. 23-24).  The court explained:

> Defendant alleges counsel was ineffective for failing to object to
> the defective information which failed to list Defendant's name as
> being charged with Counts 1, 2 and 3.  This claim is refuted by the
> record.  The Information indicates that "the above-named defendant" is

> charged with counts 1, 2 and 3, referring to Defendant, whose name appears at the top of the document where it says "State of Florida vs. Thomas E. McPhaul." *Exh. 1 – Information*. Counsel cannot be held ineffective for failing to make a nonmeritorious objection. Ground 2 is denied.

(Ex. G, p. 24). The First DCA summarily affirmed. (Ex. J).

A.    Clearly Established Federal Law

The law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

B.    Section 2254 Review of State Court's Decision

The state circuit court's reasoning provides a reasonable basis on which the First DCA could have denied relief on this claim. The charging document in petitioner's case identifies petitioner as the <u>sole</u> defendant and includes, in the caption, petitioner's name, race, gender, date of birth, and Social Security number. (Ex. A, p. 6). The operative portion of the charging document begins with this declaration:

> IN THE NAME OF AND BY THE AUTHORITY OF THE STATE OF FLORIDA:
>
> WILLIAM N. MEGGS, State Attorney for the Second Judicial Circuit of the State of Florida, <u>charges</u> that in Leon County, Florida, <u>the above-named defendant</u>(s):

(*Id.*) (emphasis added). Three counts followed. (*Id.*). Petitioner has never claimed that the identifying information was insufficient or inaccurate, only that his name

had to be repeated in each count despite the fact that he was the only defendant named in the information.  The charging document is plainly sufficient to provide petitioner notice that he was charged with the listed offenses.  Petitioner's proposed objection had no reasonable likelihood of success.  *See* Fla. R. Crim. P. 3.140(d)(2) (stating the requirements for naming the accused in a charging document)).   An attorney cannot be ineffective for failing to make a meritless argument.   *See Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) ("The state judge had a reasonable basis to decide that counsel was not deficient for failing to raise non-meritorious objections." (*citing Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001))); *see also Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . .).

The state court's ruling was not contrary to or an unreasonable application of federal law, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1) challenging petitioner's judgment of conviction and sentence in *State of Florida v. Thomas Earl McPhaul*, Leon County Circuit Court Case No. 09-CF-4163, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 3rd day of October, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.